**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**CARITSA B.,**

                              **Plaintiff,**

**v.**

                                                            **19-CV-858**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

**DECISION AND ORDER**

         Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. No. 21.  Caritsa B. ("Plaintiff"), who is represented by counsel, brings this

action pursuant to the Social Security Act ("the Act") seeking review of the final decision of

the Commissioner of Social Security ("the Commissioner") denying her application for

benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C.

§ 405(g).  Presently before the Court are the parties' competing motions for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 11,

19.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and the

Commissioner's motion (Dkt. No. 19) is granted.

**BACKGROUND**

         On October 26, 2015, Plaintiff applied for a period of disability and Disability

Insurance Benefits ("DIB"), alleging disability beginning on August 31, 2012, due to liver

issues and traumatic brain injury.  Tr. at 228-29, 253.[1]  She thereafter filed for

Supplemental Security Income ("SSI"), alleging the same disability onset date.  Tr. at 230-

35.  Plaintiff's application was denied at the initial level and she requested review.  Tr. at

135-50, 151-52.  Administrative Law Judge Lynette Gohr ("the ALJ") conducted a hearing

relating to Plaintiff's alleged disability on May 21, 2018.  Tr. at 41-79.  Plaintiff, who was

represented by an attorney, testified at the hearing, as did an impartial vocational expert

("VE").  Tr. at 41-79.  At that time, Plaintiff amended her alleged onset date to July 7, 2014,

the date of a previous unfavorable decision from the Commissioner which Plaintiff did not

appeal.  Tr. at 47.  The ALJ declined to reopen Plaintiff's prior applications.  Tr. at 17, 47.

On July 2, 2018, the ALJ issued a decision in which she found that Plaintiff was not eligible

for benefits.  Tr. at 17-34.  The Appeals Council denied Plaintiff's request for review,

making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-8.  Plaintiff

thereafter commenced this action seeking review of the Commissioner's decision.  Dkt.

No. 1.


## LEGAL STANDARD

### Determining Whether a Claimant is Entitled to DIB and SSI

The Commissioner shall not authorize DIB unless a claimant proves that she

is disabled under the Act.  To prevail on a claim for DIB, a claimant must provide medical

and other evidence to establish that she became disabled before her Title II insured status

expired.  *See generally* 42 U.S.C. § 423.  Evidence of an impairment which reached

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 6.

disabling severity after an individual's insured status has expired, or which was exacerbated after such expiration, "cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired."  *Davis v. Colvin*, No. 6:14-CV-06373 (MAT), 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016) (citing *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989)) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.'. . . [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits.") (internal citations omitted)).  Moreover, a claimant must show through objective medical evidence that she became disabled prior to the expiration of insured status; she cannot sustain her burden of proof solely by means of conclusory, self-serving testimony that she was disabled at the crucial time.  *Gonzalez v. Schweiker*, 540 F. Supp. 1256, 1258 (E.D.N.Y. 1982); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977).

There is no parallel insured status requirement for SSI.  To receive SSI under the Act, a claimant must establish through medical evidence that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 1382c(a)(3)(A), (a)(3)(H)(i).  For both DIB and SSI claims, the evidence must show that the claimant is unable to work due to a physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(5)(A).  Such impairments must be expected to result in death or have

3

caused or be expected to cause disability for a continuous period of at least 12 months. *Id.*; 20 C.F.R. §§ 404.1509, 416.909.  The claimant's impairments must also be so severe that she is unable to do her past work or any other substantial gainful work existing in significant numbers in the national economy based on her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner determines disability using a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 404.1527(d)(1), 416.927(d)(1).  The burden of showing that the claimant can perform other work existing in significant numbers in the national economy is on the Commissioner; however, the burden of proving disability is always on the claimant.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought.") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569

4

F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). The ALJ found that Plaintiff met the insured status requirements

of the Act through December 31, 2016.  Tr. at 19.[2]  At step one, the ALJ found that Plaintiff

has not engaged in substantial gainful activity since August 31, 2012, the alleged onset

date.  Tr. at 20.  At step two, she found that Plaintiff had the following severe impairments:

cervical and lumbar spine degenerative disc disease, right shoulder status-post

arthroscopic surgery, migraine headaches with syncopal episode, asthma, obesity, major

depressive disorder, and anxiety disorder.[3]

　　　　　At step three, the ALJ concluded that Plaintiff's impairments did not, either

individually or in combination, meet or equal the Listings, giving special consideration to

Section 1.00 of the Listings (Musculoskeletal System), Listing 1.02 (Major Dysfunction of a

Joint(s) (Due to Any Cause)), Listing 1.04 (Disorders of the Spine), Listing 3.03 (Asthma),

Listing 11.00 (Neurological Disorders), Listing 12.04 (Depressive, Bipolar and Related

Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing

12.15 (Trauma- and Stressor-Related Disorders).  Tr. at 22-25.  In reaching this

conclusion, the ALJ found that Plaintiff had only mild limitations in the domains of

understanding, remembering, and applying information, interacting with others,

concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or

managing herself.  Tr. at 23-24.

---

[2] Accordingly, the relevant period for DIB is between August 31, 2012 (Plaintiff's alleged disability date) and December 31, 2016 (Plaintiff's date last insured), and for SSI between October 23, 2015 (the protective date on which Plaintiff filed her SSI application) and July 2, 2018 (the date of the ALJ's decision).  Dkt. No. 19-1, p. 2.

[3] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at length in the papers.

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except with several additional limitations, including:  only occasional[4] stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no balancing and no climbing of ladders, ropes, or scaffolds; only occasional overhead reaching with the right arm; only occasional pushing and pulling with her arms and operating foot controls with her right foot; frequent[5] reaching and handling with the right arm; no repetitive neck movements, defined as movements that require essentially the same, repeated neck motions that must be completed in a regular, repetitive sequence without an opportunity for a break (giving a production line as an example); no more than moderate levels of noise as defined in the Dictionary of Occupational Titles ("DOT"); no work involving bright lights or flickering lights; no exposure to unprotected heights, moving machinery, or moving mechanical parts; no concentrated exposure to temperature extremes, humidity, wetness, dust, odors, fumes, pulmonary irritants, or vibration; only work within a low-stress work environment, defined as including simple instructions and tasks; no supervisory duties; no independent decision-making; no strict production quotas; and minimal changes in work routine and processes.  Tr. at 25-32.

---

[4] "Occasional" means anywhere between once during an eight-hour workday up to no more than one-third of an eight-hour workday.  Program Operations Manual System (POMS) DI 25001.001(A)(53), available at *https://secure.ssa.gov/poms.NSF/lnx/0425001001*.  The only frequency less than "occasional" is "none" or "never."  *Id.* at (A)(34), (48).

[5] "Frequent" means occurring between one-third and two-thirds of an eight-hour workday.  POMS DI 25001.001(A)(33), available at *https://secure.ssa.gov/poms.NSF/lnx/0425001001*.  "Frequent" is not the same as "constant."

The ALJ found that Plaintiff could not perform her relevant work as a paralegal and a general clerk, but that there are jobs that exist in significant numbers in the national economy that she could perform, including the jobs of Marker (DOT 209.587-034), Mail Clerk (DOT 209.687-026), and Cashier II (DOT 211.462-010).  Tr. at 32-33. Therefore, Plaintiff was not under a disability at any time from the alleged onset date through the date of the decision.  Tr. at 34.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 11, 19.  Plaintiff argues that the ALJ erred:  in giving "significant weight" to consulting examiner, Dr. Michael Rosenberg, because the doctor did not review Plaintiff's MRIs; and in finding that Plaintiff's subjective complaints were belied by her activities of daily living and the medical evidence.  No. 11-1, pp. 14-22.  The Commissioner argues that the opinion evidence, including that from Dr. Rosenberg, broadly supports the RFC, and that the ALJ's credibility assessment deserves deference.  Dkt. No. 19-1, pp. 7-17.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err and that the RFC is substantially supported.

**Plaintiff's RFC**

RFC represents the most the claimant can do despite her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Although the RFC finding is within the province of the ALJ, 20 C.F.R. §§ 404.1546(c), 416.946(c), the burden of proving disability is on the claimant.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  An ALJ is not required to determine the RFC based on one particular medical opinion.  *See Wilson v. Colvin*, No.

8

6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("[T]he fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'").  Rather, the RFC is based on all the relevant evidence of record.  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The Second Circuit Court of Appeals has held that the RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotation marks and brackets omitted) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).  The ALJ is tasked with reaching an RFC finding based on the record as a whole; in this analysis, medical opinions are significant, but ultimately just one part of the evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

At the time the ALJ decided Plaintiff's claim, she was required to evaluate medical opinions based on several factors under the regulations.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (detailing how the Commissioner evaluates opinion evidence for claims filed before March 27, 2017).  Although the opinions of treating physicians were generally given controlling weight, this rule was not absolute.  Rather "[t]he Commissioner retains the discretion to reach a conclusion inconsistent with an opinion of a treating physician where that conclusion is supported by sufficient contradictory evidence."  *Cohen*

*v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016).  When an ALJ does not give controlling weight to a physician's opinion, he or she must consider whether the medical source examined the claimant; whether the medical source was a treating source; the extent of the treatment relationship; how well the medical source supported his or her opinion with relevant evidence; how consistent the opinion was with the record as a whole; whether the medical source was a specialist; and any other factors that supported or contradicted the opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must also provide good reasons for the weight given to the opinion.  *Id.*

**The ALJ's Weighing of the Opinion Evidence**

After reviewing the record in its entirety, the ALJ weighed the opinions given by various medical sources about Plaintiff's physical and mental limitations.  *See* 20 C.F.R. § 404.1527(b) (in assessing RFC and other disability issues, the ALJ will consider medical opinion evidence alongside the other evidence).  The ALJ gave good reasons, grounded in the regulations and the evidence of record, for the weight she gave to those opinions.  Tr. at 30-31.  For example, the ALJ gave "little weight" to the May 2015 opinion of Dr. Brendan Cullinan, Plaintiff's treating orthopedic surgeon, that Plaintiff's cervical spondylosis would last "more than 45 days," and because of this and an unspecified "Mental Illness," Plaintiff would not be able to perform any employment "in the foreseeable future."  Tr. at 542.

The ALJ reasoned that Dr. Cullinan's opinion was vague and conclusory, was remote in time as it was rendered more than 3 years before the decision, and that subsequent evidence and Plaintiff's wide-ranging activities of daily living showed that while she had some limitations with neck movement, she was not as debilitated as Dr. Cullinan

opined.  Tr. at 31.  These are appropriate considerations in determining how much weight to afford an opinion.  20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see Cruz v. Colvin*, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (holding that an ALJ may discount a treating physician's opinion that a claimant is greatly restricted based on that claimant's activities of daily living).  This Court notes that the issue of whether an individual is able to work is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); 20 C.F.R. § 404.1527(d) (statements on issues reserved to the Commissioner can never be given special significance); *Miller v. Astrue*, 538 F.Supp.2d 641, 650 (S.D.N.Y.2008) ("[A] treating physician's opinion on whether plaintiff is disabled or unable to work is not binding, and the ALJ must review underlying medical findings and other objective evidence to support such a conclusion."); *Lacy v. Astrue*, No. 11-CV-4600 MKB, 2013 WL 1092145, at *12 (E.D.N.Y. Mar. 15, 2013).

The ALJ gave "some weight" to Plaintiff's treating neurologist, Peterkin Lee Kwen, who declined Plaintiff's request to write a letter that she was "disabled from work."  Tr. at 797.  Dr. Kwen told Plaintiff that he could not endorse a letter for full disability, stating if Plaintiff "has any dates that she could not go to work because of headaches, we can consider it, but this is not an indication for full disability."  Tr. at 797.

The ALJ gave "significant weight" to the opinions of consultative examiners Dr. Rosenberg and Dr. Rebecca Billings, a psychologist.  Tr. at 30-31 (citing Tr. at 613, 620).  After examining Plaintiff in December 2015, Dr. Rosenberg opined that Plaintiff should avoid exposure to bright light and sound and to heights, that she had mild

11

restrictions on activities involving prolonged squatting, kneeling, and bending, and that she

had mild-to-moderate restrictions for activities involving:  twisting and turning the cervical

spine; carrying heavy objects; performing overhead activity; pulling, pushing, reaching, and

repetitive use of the arms; fine motor activity of the feet; and prolonged, uninterrupted

walking.  Tr. at 620.  In giving "significant weight" to Dr. Rosenberg's opinion, the ALJ

reasoned that he had a working knowledge of the Social Security regulations and

standards, and that the opinion was supported by the objective medical evidence, and was

otherwise consistent with other evidence of record.  Tr. at 30-31.  These were "good

reasons" for giving Dr. Rosenberg's opinion greater weight.  *See* 20 C.F.R.

§ 404.1527(c)(3)-(4), (6); *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (finding

that the ALJ properly assigned great weight to the opinion of the consultative examiner

because the doctor personally examined plaintiff and reached conclusions consistent with

the objective medical evidence).


               Of particular significance in this case, no medical source opined that Plaintiff

was more restricted in work-related functions than Dr. Rosenberg opined.  Dr. Rosenberg's

opinion that Plaintiff had "mild," "mild-to-moderate," or "moderate" limitations is consistent

with an RFC for light work with the numerous additional limitations that the ALJ included.

*See Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (finding that an RFC for light

work was supported by a consultative examiner's assessment of mild limitations in

prolonged sitting, standing, and walking and a direction that the claimant avoid heavy lifting

and carrying); *Ledesma v. Berryhill*, No. 17- CV-0740, 2019 WL 1243141, at *5 (W.D.N.Y.

Mar. 18, 2019) (holding that the RFC for light work was supported by the consultative

examiner's opinion that plaintiff had mild limitations for prolonged sitting, standing, and

walking, and could not perform heavy lifting); *Hazlewood v. Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, at *7 (N.D.N.Y. 2013) (finding that the medical opinion that plaintiff had "mild to moderate limitations in walking, pushing, and pulling" supported the "ALJ's determination that plaintiff could physically perform light work").

After examining Plaintiff in December 2015, Dr. Billings opined that she would have no limitation in the ability to follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; and relate adequately with others.  Tr. at 613.  Dr. Billings opined that Plaintiff would have moderate limitations in making appropriate decisions, specifically around mental health treatment, and appropriately dealing with stress, and that those two difficulties may be related to Plaintiff's lack of mental health treatment at that time.  Tr. at 613.  In giving "significant weight" to Dr. Billings' opinion, the ALJ reasoned that the doctor specialized in psychology, was familiar with the Social Security regulations and disability standards, and that her opinion was consistent with her examination findings and the record as a whole. Once again, these are legitimate considerations in deciding what weight to give a medical opinion.  *See* 20 C.F.R. § 404.1527(c)(4)-(6); *Wright*, 687 F. App'x at 48.

The ALJ adopted vocationally-relevant mental limitations into the RFC consistent with Dr. Billings' opinion, including limiting Plaintiff to work within a low-stress work environment, defined as including simple instructions and tasks; no supervisory duties; no independent decision-making; no strict production quotas; and minimal changes in work routine and processes.  Tr. at 25.

Despite the lack of medical opinions with more-restrictive work-related limitations, Plaintiff argues that the ALJ erred by giving significant weight to Dr. Rosenberg's and Dr. Billings' opinions over those of Dr. Cullinan and Dr. Kwen, her treating physicians.  As previously noted, there were legitimate reasons to afford less weight to Dr. Cullinan's and Dr. Kwen's opinions.  Dkt. No. 11, pp. 14-18.  More importantly, even if the ALJ had given those opinions greater weight, it would not compel a finding of disability under the regulations.  Dr. Kwen declined to opine that Plaintiff could not work, and Dr. Cullinan opined that Plaintiff's cervical spondylosis would last "more than 45 days."  Tr. at 542.  This falls far short of the minimum 12-month durational requirement under the regulations.   42 U.S.C. § 1382c(a)(3)(A).

The mere fact that Dr. Rosenberg and Dr. Billings were not treating physicians did not preclude the ALJ from crediting their opinions, because they were consistent with the objective medical evidence.  *See Mongeur*, 722 F.2d at 1039 ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . , and the report of a consultative physician may constitute such evidence."); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (holding that the ALJ rightly concluded that the two consultative psychologists' opinions, which found that plaintiff was able to perform unskilled work, were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

Plaintiff argues that because Dr. Rosenberg did not review Plaintiff's MRIs, some taken prior and some taken after his examination of Plaintiff, his opinion cannot form the basis for the RFC.  This Court does not agree.  The regulations do not mandate that an examiner revisit an opinion if later imaging becomes available.  Dr. Rosenberg's report shows that he credited Plaintiff's characterization of her early imaging showing tears in the right shoulder and some swelling.  Tr. at 616.  Accordingly, after examining Plaintiff, he assessed mild to moderate neck and right shoulder pain, and mild back pain, resulting in restrictions.  The ALJ determined that Dr. Rosenberg's opinion about Plaintiff's functional limitations was consistent with the other medical evidence, including the MRIs, from before, during, and after his examination of Plaintiff.  *See* 20 C.F.R. § 404.1527(c)(4). Here, it was reasonable for the ALJ to find that Dr. Rosenberg's opinion was consistent with the record, particularly given the lack of any contradictory medical opinions.

It is the ALJ's responsibility to determine a claimant's RFC based on all the evidence in the record, including diagnostic findings.  20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.927(e)(2), 416.945(a), 416.946(c); *see Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (citing 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3), and explaining that an ALJ looks to "all of the relevant medical and other evidence" when assessing an applicant's RFC).  Plaintiff has failed to show how her cervical and lumbar MRIs (detailed at length in the ALJ's decision) in any way contradict Mr. Rosenberg's opinion or the RFC.  At worst, the imaging showed some mild spinal stenosis and disc protrusion.  Tr. at 27.  Otherwise, the MRIs revealed no spinal cord abnormality, no radiculopathy, and no evidence of significant degeneration over time.  Tr. at 27.  Accordingly, this Court finds no error in the ALJ's weighing of the medical opinions.

15

**The ALJ's Assessment of Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ did not properly evaluate her subjective complaints.  Dkt. No. 11, pp. 18-22.  This Court does not agree.  The ALJ's decision makes clear that she followed the relevant regulations and rules in evaluating Plaintiff's testimony.  *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029.  Specifically, the ALJ considered whether Plaintiff's testimony about her symptoms was consistent with the other evidence of record, and found it was not.  Tr.  at 25-29, 32.  These findings warrant particular deference from the Court.  *See Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012) (stating that an ALJ's credibility determination should be afforded deference by a reviewing Court, as it is the function of an ALJ to appraise the credibility of witnesses, including the claimant).

As with other matters governed by the substantial evidence standard, even if a different conclusion could be reached, the ALJ's reasonable findings must be upheld.  *See Wright*, 687 F. App'x at 49 (finding no basis to disturb the ALJ's credibility determination, given the sharply limited scope of the Court's review, and where the ALJ had adequately explained his reasons for finding that the Plaintiff had diminished credibility); *accord Stanton v. Astrue*, 370 F. App'x. 231, 234 (2d Cir. 2010) (stating that "[w]e have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling").

Plaintiff argues that she did not need to be "an invalid, incapable of performing any daily activities," in order to receive benefits.  Dkt. No. 11, pp. 20-21 (citation omitted).  This has little bearing on the ALJ's credibility findings in this case.  Rather, the

16

ALJ had to determine if Plaintiff's testimony that she was extremely limited — including her testimony that she could not do anything without assistance from her sister or her boyfriend, and that she could not even drive or take public transportation — was consistent with other evidence of record. The ALJ found that Plaintiff's complaints were inconsistent with the record, including evidence of her wide-ranging activities of daily living, and the objective medical evidence and opinion evidence showing that Plaintiff was limited, but not debilitated. Tr. at 26-29, 32; *see* 20 C.F.R. § 404.1529(c)(4) (in assessing subjective symptom testimony, the ALJ considers its consistency with other evidence of record).

Moreover, this Court notes that the ALJ did not entirely reject Plaintiff's subjective complaints, but found that she was not as limited as her testimony otherwise indicated. Tr. at 25-26. Indeed, in reaching the RFC, the ALJ took a view of "the relevant evidence in [a] light most favorable to the claimant" in many circumstances. Tr. at 32. Recognizing Plaintiff's functional limitations, the ALJ included numerous restrictions in the RFC, including limitations in reaching, handling, neck movement, exposure to noise and bright lights, and exposure to workplace stress. Tr. at 25.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this

17

Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:       Buffalo, New York
             March 22, 2021


                              _s/ H. Kenneth Schroeder, Jr._
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**